[694 NYS2d 14]

In the Matter of WILLIAM JOHNSON, Respondent, v NEW YORK CITY POLICE DEPARTMENT et al., Appellants.

First Department, June 29, 1999

## APPEARANCES OF COUNSEL

*Rosemary Herbert* of counsel (*Richard M. Greenberg, Office of the Appellate Defender,* attorney), for respondent.

*Margaret G. King* of counsel (*Barry P. Schwartz, William Tesler* and *Phyllis Calistro* on the brief; *Michael D. Hess, Corporation. Counsel* of New York City, attorney), for appellants.

## OPINION OF THE COURT

ELLERIN, P. J.

At issue on this appeal are the circumstances under which documents generated during a police investigation should be released to a criminal defendant pursuant to a Freedom of Information Law (FOIL) request.

The documents sought in the instant matter are complaint follow-up reports, known as DD-5s. They were produced by respondent New York City Police Department (NYPD) in connection with its investigation into the shooting death of George Braswell. As a result of that investigation, petitioner was arrested, charged with murder in the second degree, and, after a jury trial in which he set forth the defense of justification, convicted of manslaughter in the first degree. That conviction was affirmed on appeal (*People v Johnson,* 222 AD2d 316, *lv denied* 87 NY2d 974).

After his conviction, petitioner submitted a FOIL request to NYPD seeking "[a]ny written report or document, or portion thereof, concerning Mr. Johnson's arrest or the investigation of the case," specifically including "complaint follow up informational reports," which are commonly referred to as DD-5s.

Eight months later, NYPD responded to the request by disclosing eight pages of documents and nine copies of photographs. Although the disclosed materials included a

redacted copy of the complaint report completed on the day of the incident, the request insofar as it sought DD-5s was denied "on the basis of Public Officers Law section 87 (2) (g) (iii) as such records are inter-agency or intra-agency materials which are not final agency policy or determination." Petitioner filed an administrative appeal of the denial, which was unsuccessful.

Petitioner thereupon filed the instant petition pursuant to CPLR article 78. It was denied on the ground that DD-5s are exempt from disclosure as intra-agency materials, and that denial was affirmed by this Court (220 AD2d 320, *lv dismissed* 87 NY2d 943). However, the matter was remanded to Supreme Court for a determination as to whether other materials existed that were not exempt from FOIL. On remand, petitioner moved for reconsideration as to the DD-5s in light of the Court of Appeals decision in *Matter of Gould v New York City Police Dept.* (89 NY2d 267), which specifically held that DD-5s are not subject to a blanket exemption from FOIL pursuant to the exemption set forth in Public Officers Law § 87 (2) (g) for certain intra-agency material. In response, while NYPD at that point disclosed certain other documents that had originally been withheld, it opposed the request for reconsideration of the denial of disclosure of the DD-5s on the alternative ground that they were "exempt from the disclosure requirements of FOIL under the privacy exemptions set forth in Public Officers Law § 87 (2) (b) and the public interest exemption set forth in Public Officers Law § 87 (2) (f)." NYPD did not set forth any specific factual information that would support exemption of the documents generated in petitioner's case, but simply asserted that the DD-5s were subject to exemption under these provisions.*

Supreme Court thereupon granted petitioner's motion for reconsideration and ordered respondents to produce the DD-5s. The court held that DD-5s "are not exempted *per se* from FOIL's scope" and that respondents' objections to disclosure were "conclusory and lacking in justification, specificity and particularity" and were not sufficient to warrant an in camera inspection of the documents at issue.

While we agree with Supreme Court that the blanket exemption to disclosure advocated by NYPD pursuant to Public Officers Law § 87 (2) (b) and (f) is not legally sustainable, we do not

---

* NYPD, on this appeal, asserts that all of the DD-5s at issue "would identify witnesses to a crime and other private citizens."

agree that under the circumstances here petitioner's application should be granted outright.

The purpose of FOIL is to promote open government and public accountability by imposing upon governmental agencies a broad duty to make their records available to the public (*see*, Public Officers Law § 84; *see also, Matter of Gould v New York City Police Dept.*, 89 NY2d, *supra*, at 274).

In accord with these principles, agency records are presumptively open to the public (*see, Matter of Citizens for Alternatives to Animal Labs v Board of Trustees of State Univ. of N. Y.*, 92 NY2d 357, 362). Disclosure may not be denied based upon the purpose for which the agency generated or holds the documents (*supra*, at 361; *Matter of Capital Newspapers v Whalen*, 69 NY2d 246, 252-253). Nor is there any requirement that the person seeking disclosure set forth good cause, or, indeed, any cause for requesting the documents (*Matter of Gould v New York City Police Dept.*, 89 NY2d, *supra*, at 274) and disclosure may not be denied based on the identity of the person requesting disclosure (*Matter of Farbman & Sons v New York City Health & Hosps. Corp.*, 62 NY2d 75, 82). Furthermore, exemptions from disclosure are to be narrowly construed, with the burden resting on the agency to justify the applicability of the exemption upon which it relies (*see, Matter of Citizens for Alternatives to Animal Labs v Board of Trustees of State Univ. of N. Y.*, 92 NY2d, *supra*, at 362; *Matter of Hanig v State of N. Y. Dept. of Motor Vehicles*, 79 NY2d 106, 109). In order to assure that these standards are met, it is necessary that the agency set forth a "particularized and specific justification for denying access" (*Matter of Capital Newspapers v Burns*, 67 NY2d 562, 566; *see also, Church of Scientology v State of New York*, 46 NY2d 906, 907-908).

In *Matter of Gould v New York City Police Dept.* (*supra*), the Court of Appeals dealt with the difficult issue presented in the instant matter, specifically, whether disclosure of documents generated by the police during the investigation of a crime is warranted under FOIL, when disclosure is sought by an individual who has been convicted of the very crime in question.

Among the documents frequently sought in these circumstances are DD-5s, which are reports produced by police officers to record the information they have gathered in conjunction with an investigation made pursuant to a complaint. They may include the officer's record of the details of any action taken relating to the investigation, including summaries of interviews with witnesses and crime victims as well as their

names and addresses. They may also include such information as whether victims and witnesses have been shown photographs, whether neighborhood residents have been canvassed and whether the crime scene has been photographed and dusted for fingerprints.

While holding that these reports were not categorically exempt as intra-agency materials, the Court of Appeals in *Matter of Gould* clearly expressed reservations about their being released too freely. In that regard, the Court noted that "[d]isclosure of such documents could potentially endanger the safety of witnesses, invade personal rights, and expose confidential information of nonroutine police procedures" (89 NY2d, *supra,* at 278).

These concerns are reflected in Public Officers Law § 87 (2) (b), which permits an agency to deny access to a document, or portion of a document, if disclosure would result in an unwarranted invasion of personal privacy, which, under Public Officers Law § 89 (2) (b), may include, though is not limited to:

"i. disclosure of employment, medical or credit histories or personal references of applicants for employment;

"ii. disclosure of items involving the medical or personal records of a client or patient in a medical facility;

"iii. sale or release of lists of names and addresses if such lists would be used for commercial or fund-raising purposes;

"iv. disclosure of information of a personal nature when disclosure would result in economic or personal hardship to the subject party and such information is not relevant to the work of the agency requesting or maintaining it; or

"v. disclosure of information of a personal nature reported in confidence to an agency and not relevant to the ordinary work of such agency."

NYPD, citing *Matter of Empire Realty Corp. v New York State Div. of Lottery* (230 AD2d 270, 273), argues that the release of the information requested here would constitute an unwarranted invasion of personal privacy. However, NYPD makes no specific reference to any of the foregoing sections, but rather generally asserts that the disclosure of such material would be " 'offensive and objectionable to a reasonable [person] of ordinary sensibilities' " (*supra,* at 273, quoting *Matter of Dobranski v Houper,* 154 AD2d 736, 737). This conclusion is based on its contention that all witnesses always believe in and rely on the confidentiality of all of their statements to the police.

While we do not disagree with the fundamental premise that information imparted in confidence to the police, and in reli-

ance on the expectation that such confidentiality will be respected, should be exempt from FOIL, it is clear that respondents' attempt to apply such an exemption to *all* information imparted by *all* witnesses under *any* circumstances is overly broad. Nevertheless, it is equally clear that this exemption would unquestionably apply to some information provided to the police. Thus, as recognized by the Court of Appeals in *Gould*, the release of certain information contained in DD-5s may in and of itself constitute an unwarranted invasion of personal privacy.

We reject petitioner's argument that because he knew the identity of many of the witnesses to the crime, both testifying and nontestifying, the privacy exemption could not apply. Merely because petitioner knew that someone was a witness does not mean that he knew what such witness told the police, which could well have been information imparted in confidence. Nor do we find that NYPD must be able to show, in order to warrant exemption, that a witness was specifically promised confidentiality, if the circumstances give rise to the clear inference that such a promise was assumed. Of course, if NYPD were able to show that the witness was expressly promised confidentiality, that would serve as a compelling reason to decline to disclose the information. Finally, although redaction of names and addresses will sometimes suffice to protect personal privacy, NYPD has convincingly argued that redaction will not necessarily protect an individual's privacy if the circumstances themselves reveal his or her identity.

While the personal privacy provisions of FOIL do not warrant a blanket exemption from disclosure of all DD-5s, they do require an evaluation of the type of information contained in each document, the inferences that may be drawn from it, and the effectiveness of redaction in protecting privacy in the particular situation at hand.

As to the public safety provisions of section 87 (2) (f), which permit an agency to deny access to records that "if disclosed would endanger the life or safety of any person", contrary to petitioner's argument, we do not find that there must be a specific showing by respondents that petitioner, who is presently incarcerated, has threatened or intimidated any of the witnesses in his criminal case (*see*, *Matter of Gould v New York City Police Dept.*, 89 NY2d, *supra*, at 277) in order to warrant redaction of certain identifying information. The determination of which disclosures represent a potential danger to witnesses should not necessarily depend on whether petitioner has

articulated a threat against them. Even in the absence of such a threat, certain information found in DD-5s could, by its inherent nature, give rise to the implication that its release, in unredacted form, could endanger the life and safety of witnesses or have a chilling effect on future witness cooperation. However, this does not mean, as respondents argue, similar to their argument on privacy grounds, that a blanket exemption is warranted on public safety grounds for all DD-5s that reveal, directly or indirectly, the identity of individuals. For example, the disclosure of information that tends to exonerate a criminal defendant would not be likely to present any apparent danger to the witness from whom it was derived.

■ NYPD's failure to present a more expansive "particularized and specific justification for denying access" (*Matter of Capital Newspapers v Burns*, 67 NY2d, *supra*, at 566) and its seeking, instead, of a blanket exemption on privacy or safety grounds is unfortunate, and precludes a summary disposition of petitioner's FOIL request. However, under the circumstances present here, where there has been a homicide investigation, we find that NYPD's showing with respect to the nature of police investigation and the type of information contained in DD-5s is sufficient to demonstrate the necessity of protecting the safety and privacy rights of witnesses. The strong policy considerations favoring open disclosure articulated in *Matter of Gould (supra)* and other Court of Appeals precedents dictate that petitioner's FOIL rights must also be accorded protection. A decision reflecting the necessary delicate balance between these two competing interests can best be achieved after an in camera review of the requested information by the Supreme Court (*see, Matter of Fink v Lefkowitz*, 47 NY2d 567, 571; *Walker v City of New York*, 64 AD2d 980).

Respondents further claim that the materials sought contain communications that are subject to a common-law privilege because their disclosure would be contrary to the public interest, citing, *inter alia, Matter of World Trade Ctr. Bombing Litig.* (93 NY2d 1). On the record before us, it appears that this argument is improperly raised by respondents for the first time on appeal (*see, Recovery Consultants v Shih-Hsieh*, 141 AD2d 272, 276).

■ In any event, respondents' argument, that the public interest privilege creates a broader shield than FOIL by placing the burden on petitioner to demonstrate that he has a compelling and particularized need for the information that outweighs the potential harm to the public good assertedly

demonstrated by respondents, is untenable. The public safety provisions of FOIL are quite explicit and it is by these provisions that a FOIL request is to be judged (*see, Matter of Doolan v Board of Coop. Educ. Servs.*, 48 NY2d 341, 347).

Accordingly, the order and judgment (one paper), Supreme Court, New York County (Diane Lebedeff, J.), entered December 8, 1997, which, in this proceeding brought pursuant to CPLR article 78 and the Freedom of Information Law (Public Officers Law art 6), directed respondents to produce certain complaint follow-up reports to petitioner, should be reversed, on the law, without costs and the matter remanded for further proceedings in accordance with this opinion.

TOM, WALLACH and FRIEDMAN, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered December 8, 1997, reversed, on the law, without costs, the proceeding brought pursuant to CPLR article 78 and the Freedom of Information Law (Public Officers Law art 6) remanded for further proceedings in accordance with this Court's opinion.