OPINION OF THE COURT
Peter H. Moulton, J.
In this CPLR article 78 proceeding petitioner seeks to obtain records from the New York City Police Department (NYPD) pursuant to the State’s Freedom of Information Law (Public Officers Law § 84 et seq., commonly referred to as FOIL). The rec *964 ords concern Richard Rosario, who has been incarcerated since 1996 after being convicted of murder.
Petitioner Exoneration Initiative is an organization that investigates and, where appropriate, litigates claims of actual innocence on behalf of indigent incarcerated people. As of the submission of this article 78 proceeding petitioner had not yet determined whether it would provide legal representation to Rosario.
Background
By letter dated November 18, 2011, petitioner requested pursuant to FOIL four categories of documents relating to Rosario’s arrest for the murder of George Collazo. This request was denied by the NYPD’s Record Access Officer (RAO) in a letter dated December 1, 2011. The RAO denied access to the records pursuant to Public Officers Law § 87 (2) (f) on the ground that information contained in the requested records would endanger the life or safety of witnesses to the crime.
Petitioner timely took an administrative appeal of the denial. By letter dated February 24, 2012, the NYPD’s Records Access Appeals Officers (RAAO) remanded the matter to the RAO to search for the requested records. The February 24th letter also states: “That part of your appeal which concerned redactions made to a record that you included with your November 18, 2011 FOIL request will be separately addressed in an appeal determination after a search for the requested arrest records, included [sic] the redacted record that you provided, is included.”
Petitioner waited and heard nothing from the NYPD. After submitting a letter inquiry to the NYPD, and receiving no reply, petitioner brought this article 78 proceeding. Petitioner seeks to reverse the determination of the RAAO and to compel the NYPD to disclose the relevant records concerning Rosario.
The NYPD responded by moving to dismiss the petition, arguing, inter alia, that petitioner had failed to exhaust its administrative remedies. In a decision dated July 12, 2012, familiarity with which is assumed, this court denied respondent’s motion to dismiss the petition. With respect to the exhaustion argument, the court held that the NYPD had disregarded the deadlines for agency decision imposed by FOIL, and that petitioner could treat this delay as a constructive denial. (Public Officers Law § 89 [4] [a], [b].)
The NYPD subsequently submitted an answer to the petition and petitioner replied to the answer.
*965 On August 16, 2012, the NYPD released 27 pages of documents responsive to petitioner’s request. The NYPD provides no explanation as to why it did not previously release these documents.
The NYPD continues to withhold all or part of three pages of documents relating to a nontestifying witness whom the parties refer to as “passerby.” Passerby allegedly observed an altercation prior to the shooting, and described to the police the shooter, his accomplice, and the vehicle used by the perpetrators to leave the scene. Petitioner asserts that passerby’s account corroborates other evidence it has collected which shows that the murder was premeditated and committed by someone who knew the victim. These facts, if established, would appear to contradict the People’s theory at Rosario’s criminal trial, which was that Rosario killed Collazo after a random altercation. As noted above, passerby did not testify at Rosario’s criminal trial and his/her identity has never been revealed by the NYPD.* The three pages include passerby’s name, and his/her address at the time of the murder.
At oral argument the court directed the NYPD to provide the three pages concerning passerby to the court for in camera review. The court also directed the NYPD to provide four more pages which had been produced to petitioner in redacted form to determine if the redactions were warranted under FOIL. The court has now reviewed these pages in the light of the parties’ opposing arguments.
Discussion
FOIL imposes a broad duty of disclosure upon government agencies. Government records are “presumptively open” to the public, statutory exemptions to disclosure are “narrowly construed,” and the agency must articulate a “particularized and specific justification” for nondisclosure. (Matter of New York Civ. Liberties Union v City of Schenectady, 2 NY3d 657, 661 [2004] [internal quotation marks omitted], citing Matter of Gould v New York City Police Dept., 89 NY2d 267, 274, 275 [1996].)
The NYPD first argues that complete disclosure of the three passerby pages is barred by Public Officers Law § 87 (2) (f), *966 which provides that government records may be withheld if their disclosure “could endanger the life or safety of any person.” Courts have held that the agency must only demonstrate a possibility of endangerment to invoke this exemption. (See Matter of Bellamy v New York City Police Dept., 87 AD3d 874, 875 [1st Dept 2011], affd 20 NY3d 1028 [2013].) On the other hand, there is no comprehensive prohibition on the disclosure of police records concerning information provided by witnesses. (See Matter of Johnson v New York City Police Dept., 257 AD2d 343, 348 [1st Dept 1999].)
The NYPD has not carried its burden to show that there is a possibility that passerby would be endangered by the release of the three pages. Passerby was not a witness who offered trial testimony that led to Rosario’s conviction. Instead, the three pages reviewed by the court demonstrate that passerby may have information that helps Rosario as he attempts to prove his innocence. As the First Department has stated, “the disclosure of information that tends to exonerate a criminal defendant would not be likely to present any apparent danger to the witness from whom it was derived.” (Johnson, 257 AD2d at 349.) This fact distinguishes cases that have denied access to government records because disclosure could give rise to endangerment. For example, there is no allegation that Rosario was engaged in gang-related activity at the time Collazo was killed (cf. Bellamy, 87 AD3d 874 [where case involved gang-related murder ordered from prison of parole officer, non-testifying witness statements exempt from disclosure]), and passerby did not give inculpatory evidence at Rosario’s trial (cf. Matter of Whitfield v Bailey, 80 AD3d 417, 419 [1st Dept 2011] [petitioner who “has a history of violence” may not obtain address of witness who testified against him at criminal trial]).
A second document that was produced to petitioner with a partial redaction, the first page of four non-passerby documents, also arguably falls within Public Officers Law § 87 (2) (f). That one-page document contains a statement of Jose Diaz, a food cart vendor present on the night of the murder who testified on the prosecution’s case. This statement was produced to petitioner, but with redactions of Diaz’s home address and phone number. Diaz’s name was not redacted from the copy of this document given to petitioner since he was known to Rosario from the trial.
Certainly, the safety of a testifying prosecution witness will in many instances warrant the redaction under FOIL of his ad *967 dress and phone number from a statement given to police. However, in this case Diaz might also have exculpatory information that would help Rosario. After his direct appeal was denied, Rosario brought an unsuccessful habeas corpus petition in federal court. Both the Magistrate Judge and the Federal District Court Judge who reviewed Rosario’s habeas corpus petition noted that Diaz did not identify Rosario at trial, but rather gave testimony concerning the altercation that led to Collazo’s murder. (Rosario v Ercole, 582 F Supp 2d 541, 546, 561 [SD NY 2008], affd 601 F3d 118 [2d Cir 2010], cert denied sub nom. Rosario v Griffin, 563 US —, 131 S Ct 2901 [2011].) Diaz stated that he thought he could identify the men involved in the altercation, but he did not identify Rosario in the courtroom. Given that he was present on the night of the murder, and that he did not link Rosario to the murder, the NYPD has not carried its burden to demonstrate that Diaz would be endangered by the release of his 1996 address and phone number.
The NYPD next argues that the passerby records are exempt from disclosure pursuant to Public Officers Law § 87 (2) (e) (iii). That section states that requests for records “compiled for law enforcement purposes” may be denied where disclosure would “identify a confidential source or disclose confidential information relating to a criminal investigation.”
There is nothing in the record before the court indicating that passerby was given an explicit assurance of confidentiality. Rather, the NYPD asserts that passerby gave information to the police under an implicit assurance of anonymity and that disclosure of his/her statement and personal information would violate that implicit assurance. The NYPD argues that it will be more difficult to obtain eyewitnesses’ cooperation if their statements, names and addresses become known at a later date through FOIL.
The NYPD is correct that courts have not required an explicit assurance of anonymity before a witness’ statement will be exempt under Public Officers Law § 87 (2) (e) (iii). However, the agency must show that “the circumstances give rise to the clear inference that such a promise was assumed.” (Johnson, 257 AD2d at 348.) Here the NYPD has not provided any factual predicate — other than the fact that the passerby was questioned in the context of a murder investigation — that could give rise to the inference of an assumed promise of confidentiality. This fact, standing alone, is not enough to establish an “assumed” *968 promise of confidentiality. If the legislature wished to exempt from FOIL disclosure all statements made by non-testifying witnesses in homicide investigations, it could have done so. It did not carve out so broad an exception.
Witnesses questioned during a murder investigation may potentially be called to take the stand at a criminal trial. Often it is impossible to know which witnesses will have information necessary to prove the People’s case until the investigation is concluded and the District Attorney prepares for trial. Passerby’s statement was made at the outset of the investigation, and it is unlikely that anyone knew at the time passerby gave his/ her statement to the police whether passerby’s testimony at trial would be necessary to prove an element of the District Attorney’s case.
For these reasons, the court finds that the NYPD did not establish that there was any implicit promise of confidentiality made to passerby.
The NYPD next argues that disclosure of the passerby records and the removal of the redactions on the remaining four pages of documents would “constitute an unwarranted invasion of personal privacy” and therefore should be barred by Public Officers Law §§ 87 (2) (b) and 89 (2) (b). Section 89 (2) (b) states:
“(b) An unwarranted invasion of personal privacy includes, but shall not be limited to:
“i. disclosure of employment, medical or credit histories or personal references of applicants for employment;
“ii. disclosure of items involving the medical or personal records of a client or patient in a medical facility;
“in. sale or release of lists of names and addresses if such lists would be used for solicitation or fund-raising purposes;
“iv. disclosure of information of a personal nature when disclosure would result in economic or personal hardship to the subject party and such information is not relevant to the work of the agency requesting or maintaining it;
“v. disclosure of information of a personal nature reported in confidence to an agency and not relevant to the ordinary work of such agency;
“vi. information of a personal nature contained in a workers’ compensation record, except as provided *969 by section one hundred ten-a of the workers’ compensation law; or
“vii. disclosure of electronic contact information, such as an e-mail address or a social network user-name, that has been collected from a taxpayer under section one hundred four of the real property tax law.”
The NYPD argues that it must make only a prima facie showing that disclosure might constitute an unwarranted invasion of privacy, and that the burden then shifts to petitioner to demonstrate that the public interest outweighs the individual’s privacy rights. This burden-shifting procedure has been rejected by the Court of Appeals in Matter of Data Tree, LLC v Romaine (9 NY3d 454, 462-463 [2007]). Under that case, the burden of proof rests solely on the NYPD to demonstrate an unwarranted invasion of privacy. The NYPD has failed to carry that burden with respect to passerby’s pages, and with respect to the redacted information contained on the remaining four pages.
The NYPD cites none of the enumerated examples of unwarranted invasions of personal privacy set forth above. Instead, it invokes the possibility that future witnesses to crimes might decline to cooperate with the NYPD if they know that their names and addresses, and the content of their statements to police, might be revealed at some later date pursuant to FOIL. The NYPD argues that for this reason, the witness information contained in the seven pages reviewed in camera should be protected from disclosure. This argument expands the “unwarranted invasion of privacy” exception to a breadth where FOIL is eclipsed. If this argument were correct, then no witness information would ever be available pursuant to FOIL from the NYPD under any circumstances.
The legislature struck a different balance in FOIL. It did not impose a blanket prohibition on the disclosure of witness testimony and identifying information. (See Matter of Carnevale v City of Albany, 68 AD3d 1290 [3d Dept 2009].) Instead, as discussed above, it limited or prohibited disclosure to particular situations such as those discussed above: where there is an explicit or implicit assurance of confidentiality by the police, or where disclosure might endanger a witness.
The first of the four non-passerby pages, containing Jose Diaz’s address and phone number, is discussed above. The redactions on the other non-passerby pages are of names of individuals, and fragmentary information about the individuals, written *970 in what appear to be police notebooks. It is unclear how, or even whether, these names are relevant to this investigation. As there is nothing in the record to indicate that this redacted information is barred from disclosure by FOIL, these pages should be produced in unredacted form.
In its cover letter accompanying the seven pages discussed herein, the NYPD argues that a police officer’s tax registry number that appears on one of the passerby documents should be redacted as it would be an invasion of the officer’s privacy. The NYPD states that this number is used for internal purposes, but does not explain how the disclosure of the number could compromise the officer’s privacy. In any event, the number already appears in the partially redacted pages in petitioner’s possession attached to the petition as exhibit 6, along with the officer’s name.
For the reasons stated the court holds that all seven pages of documents should be produced in unredacted form to petitioner pursuant to FOIL.
As the prevailing party, petitioner is entitled to seek reasonable legal fees pursuant to Public Officers Law § 89 (4) (c) (i) and (ii). The court notes that it held in the July 12, 2012 decision that the NYPD failed to follow statutory time frames in responding to petitioner’s FOIL requests. The NYPD’s late production of 27 pages of documents does not excuse its failure to timely respond to petitioner’s requests. (See Matter of New York State Defenders Assn. v New York State Police, 87 AD3d 193 [3d Dept 2011].)
Conclusion
For the reasons set forth above, it is ordered and adjudged that the NYPD’s decision to withhold, in whole or in part, the seven pages of documents inspected by the court in camera is annulled; and it is ordered and adjudged that the NYPD shall provide petitioner with unredacted copies of all seven pages of documents inspected by the court in camera, within 20 days of service of this order with notice of entry.

 One of the three passerby pages was produced to petitioner in redacted form pursuant to its FOIL request. Another copy of this same page, with overlapping but differing redactions, was produced to Rosario’s defense counsel at trial. These two versions of this page are attached to the petition as exhibit 6.