■ In the Matter of EXONERATION INITIATIVE, Respondent, v NEW YORK CITY POLICE DEPARTMENT, Appellant. [980 NYS2d 73]—

Order and judgment (one paper), Supreme Court, New York

County (Peter H. Moulton, J.), entered March 28, 2013, granting the CPLR article 78 petition to annul respondent NYPD's determination, which redacted or withheld seven pages of documents from a file pertaining to a homicide investigation, and to compel respondent to disclose unredacted copies of all seven pages, as requested by petitioner pursuant to the Freedom of Information Law (FOIL), and awarding petitioner reasonable attorney's fees, modified, on the law, to grant the petition to the extent of directing respondent to disclose the two pages that were entirely withheld, with the name, address, telephone number, and any other information identifying the unnamed informant redacted therefrom, to disclose a copy of the DD5 pertaining to that informant with the redactions made by respondent except for the police tax registration number, and denying petitioner's request for attorney's fees, and otherwise affirmed, without costs. Judgment, same court and Justice, entered June 24, 2013, awarding petitioner $49,276.94 in attorney's fees, reversed, on the law, without costs, and the judgment vacated.

In this action for the disclosure of documents relating to a criminal investigation of Richard Rosario, who was convicted of murder in the second degree, we find that petitioner exhausted its administrative remedies by submitting an appeal from respondent's initial denial of its FOIL (Public Officers Law § 84 *et seq.*) request, and, commencing the instant proceeding when it received only a partial determination after the statutorily mandated 10-day response period had lapsed (*see Matter of New York Times Co. v City of N.Y. Police Dept.*, 103 AD3d 405, 408 [1st Dept 2013], *lv dismissed* 21 NY3d 930 [2013]; *Council of Regulated Adult Liq. Licensees v City of N.Y. Police Dept.*, 300 AD2d 17, 18 [1st Dept 2002]; *see also* Public Officers Law § 89 [4] [a]-[b]). Petitioner's FOIL request sought disclosure of documents relating to the murder investigation, including a DD5, and statements from persons interviewed by the police, including someone who did not testify at trial and is identified in the DD5 only as "Passerby," and Jose Diaz, a food cart vendor who was operating his hot-dog truck within a short distance of where the murder took place.

We agree with the dissent's observation that the public safety exemption of Public Officers Law § 87 (2) (f) does not warrant a blanket exception for DD5s* that reveal the identity of individuals (*see Matter of Gould v New York City Police Dept.*, 89 NY2d

---

* DD5s are "reports produced by police officers to record the information they have gathered in conjunction with an investigation made pursuant to a complaint," which are commonly requested in FOIL applications pertaining to

267, 277 [1996]; *Matter of Johnson v New York City Police Dept.*, 257 AD2d 343, 349 [1st Dept 1999]). However, the dissent's rationale for release of this information, i.e., that "they may provide further information that would benefit Rosario's case" is at odds with both the public safety and privacy exemptions of Public Officers Law § 87.

The *Gould* Court recognized that unlimited disclosure of identifying information on the DD5s is not warranted. It stated that "[d]isclosure of such documents could potentially endanger the safety of witnesses, invade personal rights, and expose confidential information of nonroutine police procedures. The statutory exemptions contained in the Public Officers Law, however, strike a balance between the public's right to open government and the inherent risks carried by disclosure of police files" (*Gould*, 89 NY2d at 278, citing Public Officers Law § 87 [2] [b], [e], [f]).

We disagree with the dissent's conclusion that there is no basis to find that "disclosing the passerby's name, address, and telephone number as of 1996, and Jose Diaz's address and telephone number, could endanger them or violate their privacy." While it is true that, as we observed in *Johnson*, "the disclosure of information that tends to exonerate a criminal defendant would not be likely to present any apparent danger to the witness from whom it was derived" (257 AD2d at 349), we went on to state that, in the context of a homicide investigation, "we do not find that there must be a specific showing by respondents that petitioner, who is presently incarcerated, has threatened or intimidated any of the witnesses in his criminal case . . . in order to warrant redaction of certain identifying information" (257 AD2d at 348, citing *Gould*, 89 NY2d at 277). Indeed, as we noted in *Matter of Bellamy v New York City Police Dept.* (87 AD3d 874 [1st Dept 2011], *affd* 20 NY3d 1028 [2013]), "The agency in question need only demonstrate 'a possibility of endanger[ment]' in order to invoke this exemption" (*id.* at 875, quoting *Matter of Connolly v New York Guard*, 175 AD2d 372, 373 [3d Dept 1991]; *see Matter of Rodriguez v Johnson*, 66 AD3d 536 [1st Dept 2009]). In fact, "[e]ven in the absence of such a threat, certain information found in DD5s could, by its inherent nature, give rise to the implication that its release, in unredacted form, could endanger the life and safety of witnesses or have a chilling effect on future witness cooperation" (*Johnson*, 257 AD2d at 349).

---

prior criminal investigations (*see Matter of Johnson v New York City Police Dept.*, 257 AD2d 343, 346, 349 [1st Dept 1999], *lv dismissed* 94 NY2d 791 [1999]).

Here, disclosure of the information concerning Diaz is not mandated by the observation that his testimony was potentially exculpatory. While his failure to identify Rosario in a lineup is arguably exculpatory, his testimony at trial which largely corroborated the accounts provided by the People's other two witnesses raises the "possibility of endangerment," satisfying respondent's burden with respect to the information pertaining to Diaz (*see Matter of Bellamy*, 87 AD3d at 875).

Further, the disclosure of the information regarding Passerby would also create a possibility that Passerby's life or safety could be endangered. While it is true that Passerby's statement might seem at odds with the account provided by the People's witnesses, this account is not dispositive.

Moreover, we find that the disclosure of the addresses and phone numbers of Diaz and Passerby, as well as Passerby's name, would constitute an unwarranted invasion of privacy. Since there is no argument that the records at issue fall within any of the six non-exhaustive categories of exemption set forth in Public Officers Law § 87 (2) (b), we must, as noted by the dissent, "balance the privacy interests at stake against the public interest in disclosure of information" (*Matter of Regenhard v City of New York*, 102 AD3d 612, 613 [1st Dept 2013]). In addition to the above analysis of the public safety exemption, account must be taken of the chilling effect the release of such personal information to the general public would have on future witnesses to intentional murder from cooperating with the police, for fear that once they provide their contact information, the general public would have easy and permanent access to their whereabouts as well as the information they provided during the investigation. We have held such redactions to be proper (*see Matter of Rodriguez*, 66 AD3d 536).

Accordingly, we find that respondent properly redacted identifying information regarding Diaz and Passerby before disclosing some of the requested documents.

Information regarding other persons who did not provide statements to law enforcement was properly withheld since, under these circumstances, disclosure would result in an unwarranted invasion of personal privacy (*see* Public Officers Law § 87 [2] [b]; *Matter of Bellamy*, 87 AD3d at 875; *Matter of De Oliveira v Wagner*, 274 AD2d 904, 905 [3d Dept 2000]). However, respondent fails to establish that the disclosure of the tax registration number of the detective who recorded an unnamed informant's statement would constitute an unwarranted invasion of public privacy; thus, respondent must disclose a new copy of the DD5 pertaining to this informant with this number unredacted.

Respondent fails to establish that the pages pertaining to the unnamed informant fall under the confidentiality exemption (Public Officers Law § 87 [2] [e] [iii]), in the absence of any evidence that this person received an express or implied promise of confidentiality (*see Matter of Johnson*, 257 AD2d at 348). Furthermore, since respondent fails to establish that any exemption justifies the complete withholding of two of the three pages pertaining to this informant, respondent is ordered to disclose those pages with redactions only to conceal the informant's name, address, phone number, and any other information identifying this person.

Since petitioner has not substantially prevailed, it is not entitled to attorney's fees pursuant to Public Officers Law § 89 (4) (c). Concur—Tom, J.P., Sweeny, Saxe and Clark, JJ.

Freedman, J., dissents in a memorandum as follows: I respectfully dissent to the extent that I would affirm both Supreme Court's order and judgment directing respondent to disclose unredacted records that petitioner seeks under the Freedom of Information Law (Public Officers Law § 84 *et seq.*) (FOIL), and the court's judgment awarding petitioner attorney's fees under Public Officers Law § 89 (4) (c).

Petitioner, a nonprofit organization that investigates and, where it deems appropriate, litigates on behalf of indigent prisoners claiming their actual innocence, seeks access to New York City Police Department (NYPD) records relating to the criminal investigation of Richard Rosario, who has been incarcerated since his conviction for second-degree murder in 1996. Rosario maintains that he was in Florida when the murder occurred and that his trial counsel was constitutionally ineffective for failing to adequately investigate his alibi defense.

In November 2011, petitioner filed a FOIL request with the NYPD requesting disclosure of, among other things, "DD5" complaint follow-up reports and other records pertaining to statements by a passerby at the crime scene who did not testify at Rosario's criminal trial and by Jose Diaz, a trial witness for the People who was in the vicinity of the murder but who did not identify defendant. Petitioner contends that the passerby's and Diaz's statements corroborate other evidence that the murder was premeditated and committed by someone who knew the victim, contradicting the People's theory at Rosario's criminal trial that the victim was a stranger who Rosario killed after a chance encounter.

In December 2011, the NYPD denied the entire FOIL request; thereafter petitioner filed an administrative appeal. In a February 2012 letter, a NYPD Records Access Appeals Officer

informed petitioner that the NYPD had been directed "to conduct a further search for the requested records" and that its determination would be deferred until the search was completed.

In May 2012, petitioner filed this CPLR article 78 proceeding to compel respondents to disclose the requested documents. Petitioner also seeks attorney's fees and costs. The NYPD cross-moved to dismiss, contending that petitioner failed to exhaust its administrative remedies because the NYPD was still searching for the requested records. In July 2012, Supreme Court denied the cross motion, finding that the NYPD failed to comply with the 10-day time limit for an agency to respond to an appeal from a FOIL request denial (Public Officers Law § 89 [4] [a]), and that the failure constituted a denial of the administrative appeal under Public Officers Law § 89 (4) (b).

In August 2012, NYPD answered the petition, asserting that the records it refused to furnish, or furnished with redactions, fall under the FOIL exemptions for public safety (Public Officers Law § 87 [2] [f]), personal privacy (Public Officers Law § 87 [2] [b]), and confidentiality (Public Officers Law § 87 [2] [e] [iii]). After NYPD furnished some of the requested records and a conference was held before the court, the number of pages in dispute was narrowed to seven. Three of the pages make up a DD5 containing the passerby's statement and the other four pertain to Jose Diaz. In response to the FOIL request, the NYPD withheld two of the seven pages from the passerby's DD5 and redacted the other five pages to remove the passerby's name, address, and telephone number and Diaz's address and telephone number. The NYPD also redacted other individuals' names and some fragmentary information about them from the five pages.

In March 2013, after reviewing the seven unredacted pages in camera, the motion court granted the petition and ordered the NYPD to disclose the pages in full, finding that the NYPD failed to establish that the disclosure would endanger either the passerby or Diaz or invade anyone's privacy. It further found that the exemption to protect confidential sources is inapplicable. In addition, the court rejected the NYPD's claim that a police officer's tax registration number should be redacted from the passerby's DD5 under the personal privacy exemption.

In June 2013, the Court awarded petitioner approximately $49,000 in attorney's fees. Thereafter, the NYPD appealed from both the order and judgment granting the petition and the judgment awarding attorney's fees. The appeal also brings up for review the July 2012 order denying the NYPD's cross motion to dismiss the petition.

As a preliminary matter, I agree with the majority that the cross motion was properly denied because the NYPD's failure to respond fully to the FOIL request within 10 days constituted a denial which exhausted petitioner's administrative remedies. I also agree that the passerby's DD5 pages do not fall under FOIL's confidentiality exemption because the NYPD made no showing that it made an express or implicit promise of confidentiality to the passerby.

However, I see no basis to find that disclosing the passerby's name, address, and telephone number as of 1996, and Jose Diaz's address and telephone number, could endanger them or violate their privacy. FOIL imposes a broad duty on government agencies to disclose their records. Statutory exemptions to disclosure are "narrowly construed," and an agency's justification for nondisclosure must be "particularized and specific" (*Matter of New York Civ. Liberties Union v City of Schenectady*, 2 NY3d 657, 661 [2004]). While FOIL provides that an agency may withhold records if it demonstrates the possibility that disclosure "could endanger the life or safety of any person" (Public Officers Law § 87 [2] [f]; *Matter of Bellamy v New York City Police Dept.*, 87 AD3d 874, 875 [1st Dept 2011], *affd* 20 NY3d 1028 [2013]), "this does not mean . . . that a blanket exemption is warranted on public safety grounds for all DD-5s that reveal . . . the identity of individuals" (*Matter of Johnson v New York City Police Dept.*, 257 AD2d 343, 349 [1st Dept 1999], *lv dismissed* 94 NY2d 791 [1999]). In *Johnson*, this Court noted that "the disclosure of information that tends to exonerate a criminal defendant would not be likely to present any apparent danger to the witness from whom it was derived" (*id.*).

Here, petitioner seeks identifying information about the passerby and Diaz because their accounts of the murder are at odds with the People's theory of the case and they may provide further information that would benefit Rosario's case. After reviewing the three pages pertaining to the passerby, the motion court agreed with petitioner that the passerby "may have information that helps Rosario as he attempts to prove his innocence" (*Matter of Exoneration Initiative v New York City Police Dept.*, 39 Misc 3d 962, 966 [Sup Ct, NY County 2013]). The majority acknowledges that the passerby's statement to the police did not corroborate "the account provided by the People's witnesses," and I am puzzled by the majority's reasoning that, merely because "this account is not dispositive," disclosing information about the passerby who contradicted that account would endanger him.

As for Diaz, heretofore disclosed records indicate that he made

certain statements to the NYPD, which the People did not elicit at trial and which suggest that the murder was premeditated and the perpetrator knew the victim. Diaz stated that the perpetrator and an accomplice brandished guns during the altercation, and that the shooter followed the victim and his friend as the accomplice ran to the getaway car and moved it to enable the shooter to flee from the scene. Petitioner also is motivated to contact Diaz because, although he testified that he thought he could recognize the men involved in the incident, he was unable to identify Rosario as the perpetrator both during a police lineup three weeks after the shooting and in court. The majority's determination that disclosing Diaz's address and telephone number as of 1996 could endanger him merely because he testified at Rosario's trial is conclusory, given that some of his statements to the police, as well as his failure to identify Rosario, are exculpatory.

I also do not concur with the majority's holding that the privacy exemption justifies redacting identifying information and other data for Diaz, the passerby, and other persons named in the seven pages. To invoke the exemption, an agency must demonstrate that the records sought constitute an "unwarranted invasion of personal privacy" (*Matter of New York Times Co. v City of N.Y. Fire Dept.*, 4 NY3d 477, 485 [2005]). To determine whether disclosure of personal information is warranted, a court "must balance the privacy interests at stake against the public interest in disclosure of the information" (*Matter of Regenhard v City of New York*, 102 AD3d 612, 613 [1st Dept 2013]).

Here, any intrusion into individuals' privacy is outweighed by the possibility that Rosario is actually innocent and that evidence of actual innocence may be revealed. It is noted that after Rosario's direct appeal from his conviction failed, he sought habeas relief which was denied by a divided panel of the Second Circuit of the United States Court of Appeals (*Rosario v Ercole*, 601 F3d 118, 126 [2d Cir 2010], *cert denied* 563 US —, 131 S Ct 2901 [2011]). In a partial dissent, Circuit Judge Straub wrote that "there exists too much alibi evidence that was not presented to the jury, and too little evidence of guilt, to now have *any* confidence in the jury's verdict. . . . The majority essentially concedes a *Strickland* violation and that Rosario would be entitled to relief if this case arose on direct review but denies the writ out of deference to the state court" (*Rosario*, 601 F3d at 129, 137 [Straub, J., dissenting]).

Since I believe that none of the FOIL exemptions justify withholding or redacting the seven pages and would affirm Supreme

Court's grant of the petition, I would also affirm the award of attorney's fees to petitioner because it prevailed in the litigation and Supreme Court providently exercised its discretion in finding that the NYPD's delay in responding to the administrative appeal warranted the award (*see* Public Officers Law § 89 [4] [c] [ii]).