| **Estevez v New York City Police Dept.** |
|:---:|
| 2025 NY Slip Op 30380(U) |
| January 30, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 151851/2023 |
| Judge: Shahabuddeen A. Ally |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:     HON. SHAHABUDDEEN A. ALLY                    PART 16
                        *Justice*

| | |
|---|---|
| FRANK ESTEVEZ, | INDEX NO.          151851/2023 |
| Petitioner, | MOTION DATE       3/27/2023 |
| | MOTION SEQ. NO.        001 |
| For a Judgment Pursuant to Article 78 of the Civil Practice Law and Rules | |
| -against- | **DECISION & ORDER** |
| NEW YORK CITY POLICE DEPARTMENT and CITY OF NEW YORK, | |
| Respondents. | |

> The following e-filed documents, listed by NYSCEF document number, were read on Mot. Seq. No. 1 to/for **ARTICLE 78 (BODY OR OFFICER)**: 1-13, 16-38, 40-41

On July 17, 2023, the Court issued an Interim Order in this special proceeding granting the Verified Petition and Notice of Petition insofar as requiring respondents NEW YORK CITY POLICE DEPARTMENT (the "NYPD") and CITY OF NEW YORK (the "City"; and, together with the NYPD, "Respondents") to submit redacted and unredacted copies of the body-worn camera ("BWC") footage relating to Arrest ID Q2206422-L to the Court for *in camera* review. (NYSCEF Doc. 41) The Court assumes familiarity with the Interim Order.

## I.     PROPRIETY OF REDACTIONS

On August 8, 2023, in compliance with the Interim Order, Respondents submitted the redacted and unredacted BWC footage. (*See id.* Doc. 43) The footage comprises six separate video files. The Court has reviewed the unredacted footage and now determines whether the redactions were properly applied according to the claimed exemptions under New York Public Officers Law ("POL") § 87(2).

151851/2023 Frank Estevez v. New York City Police Department et al.                    Page 1 of 11
Mot. Seq. Nos. 001

1 of 11

### A. Redactions of Video and Audio Related to the Complainant and Her Child

According to the *Vaughn* index that Respondents have submitted categorizing each of the redactions and the allegedly applicable exemptions, the overwhelming majority of the redactions applied across the six video files constitute blurring of the female complainant's and her child's face in the footage and removal of any audio in the footage capturing their speech. (*See* Affirm. of Katherine T. Obanhein in Supp. of Verified Answer, dated Mar. 20, 2023 (NYSCEF Doc. 22), ¶ 16; *id.* Ex. J ("Vaughn Index") (NYSCEF Doc. 37)) Respondents' redaction of these portions of the footage are based on assertions of exemptions under POL § 87(2)(b) and (f).

As stated in the Interim Order, it is well settled that the provisions of FOIL are "to be liberally construed and its exemptions narrowly interpreted so that the public is granted maximum access to the records of government." *Capital Newspapers, Div. of Hearst Corp. v. Whalen*, 69 N.Y.2d 246, 252 (1987). The agency relying on an exemption to deny access to a record must "articulate a particularized and specific justification" for doing so. *Dilworth v. Westchester Cnty. Dep't of Corr.*, 92 A.D.3d 722, 724 (2d Dep't 2012) (internal quotation marks and citation omitted). To make such a showing, evidentiary support is necessary and conclusory assertions are insufficient. *Id.*

POL § 87(2)(b) provides for exemptions of records that "if disclosed would constitute an unwarranted invasion of personal privacy" under POL § 89(2), which includes, but is not limited to:

    i.    disclosure of employment, medical or credit histories or personal references of applicants for employment;

    ii.    disclosure of items involving the medical or personal records of a client or patient in a medical facility;

    iii.    sale or release of lists of names and addresses if such lists would be used for commercial or fund-raising purposes;

    iv.    disclosure of information of a personal nature when disclosure would result in economic or personal hardship to the subject party and such information is not relevant to the work of the agency requesting or maintaining it;

    v.    disclosure of information of a personal nature reported in confidence to an agency and not relevant to the ordinary work of such agency;

    vi.    information of a personal nature contained in a workers' compensation record, except as provided by section one hundred ten-a of the workers' compensation law;

vii. disclosure of electronic contact information, such as an e-mail address or a social network username, that has been collected from a taxpayer under section one hundred four of the real property tax law; or

viii. disclosure of law enforcement arrest or booking photographs of an individual, unless public release of such photographs will serve a specific law enforcement purpose and disclosure is not precluded by any state or federal laws.

POL § 89(2)(b). Absent specific reference to one of the above categories, however, a Court assessing the applicability of this exemption must "balance the privacy interests at stake against the public interest in disclosure of information." *Regenhard v. City of NY.*, 102 A.D.3d 612, 613 (1st Dep't 2013).

Initially, while the NYPD has cited numerous cases in support of its position that the redaction of the complainant's and her child's faces are proper under POL § 87(2)(b), the vast majority of those cases involve the potential revelation of names, addresses, or other specific written information that could lead to the identification of the individuals in question. Only one of those cases actually involves the blurring of faces in video footage, and the relevant decision in that case is unpublished. In *Spectrum News NY1 v. New York City Police Department*, the petitioner sought the release of numerous videos involving NYPD officers' interactions with the public, including individuals reporting crimes to officers and individuals in the midst of arrest by officers. *See* Sup. Ct., N.Y. Cnty., Jan. 29, 2019, Freed, J. Index. No. 150305/2016, NYSCEF Doc. 114 at 3-23. In an Interim Decision issued on January 29, 2019, the court resolved a number of the parties' disputes concerning the propriety of the redactions that the NYPD applied to certain of the videos pursuant to exemptions under POL § 87(2). *See id.* at 25-33. Regarding whether the NYPD's blurring of individuals' faces in the videos pursuant to the privacy exemption under POL § 87(2)(b) was proper, the court held:

> It can hardly be doubted considering the extent of current technology that a person's face is as identifying as his or her name and address. Facial recognition technology has made it possible for people to open their phones with a camera and for computer software to identify individuals. Further, the ease with which videos can now be shared through social media has allowed those captured in so-called viral videos to be identified within a matter of hours or even minutes. The Court must also keep in mind that the members of the public who are captured in the videos did not consent to have their images captured by the police cameras. For these reasons, this Court must consider a person's face to be private, personally identifying information to the same extent as that person's name and

151851/2023 Frank Estevez v. New York City Police Department et al.  Page 3 of 11
Mot. Seq. Nos. 001

address. While the public has an interest in knowing how the NYPD, in general, interacts with other members of the public, it does not have an interest in knowing precisely which individuals those interactions pertain to. To the extent that an agency is permitted to redact other types of personal identifying information, it must similarly be permitted to redact the faces of all members of the public captured in the footage.

*Id.* at 28.

By contrast, Petitioner cites to *New York Lawyers for Public Interest v. New York City Police Department*, wherein the First Department ordered that the faces of bystanders at a murder scene should *not* be redacted from BWC footage because the privacy interests of the bystanders were "attenuated" because "the bystanders' expectations of privacy in the public square are limited." 192 A.D.3d 539, 540 (1st Dep't 2021).

The Court does not view these decisions as conflicting. Rather, they reflect the respective courts' balancing of the privacy and public interests at stake in each situation under consideration. Nevertheless, this Court agrees with the reasoning in *Spectrum News NY1* that, as a general matter, images of an individual's face can, in the present technological environment, amount to personal identifying information similar to names and addresses. That is not to say, however, that an individual's face may or must always be redacted from materials disclosed pursuant to POL § 87(2)(b). To the contrary, agencies and courts must always engage in the balancing of public and privacy interests mandated by controlling caselaw, such as *Regenhard*, 102 A.D.3d 612, on a case-by-case basis.

In this instance, where the arrest involves a domestic dispute between two individuals, and the complainant's interaction with NYPD officers was entirely within the confines of her own home, the public has little interest in disclosure of the identity of the complainant or her child, but the complainant has a significant interest in her own privacy and in the privacy of her child. To the extent that images of their faces can be used to discover their identity, therefore, the NYPD properly applied the privacy exemption under POL § 87(2)(b) when it redacted the footage to blur the faces of the complainant and her child. Further, there is no countervailing interest in public disclosure of the identities of the complainant and her child on Petitioner's part because he has close personal and familial relationships with both and already knows their identities regardless of the redactions.

151851/2023 Frank Estevez v. New York City Police Department et al.
Mot. Seq. Nos. 001

Page 4 of 11

[* 4]

4 of 11

The same cannot be said of the audio of the complainant's interactions with the NYPD officers. Nothing in the audio, except for any instance in which the complainant may state her name or address or the name or address of her child,[1] can reasonably be viewed as risking exposure of her or her child's identity. Further, Respondents' reliance on generalized claims of (1) discouragement of witness cooperation if a witness's statements were subject to disclosure and (2) that a complainant's interactions with the NYPD captures them at their most vulnerable is insufficient to justify withholding the audio under POL § 87(2)(b). *See Collins v. N.Y.C. Police Dep't*, 55 Misc. 3d 1214(A), at *2 (N.Y. Sup. Ct. N.Y. Cnty. Apr. 27, 2017) ("Respondent's reliance on the claim that witness cooperation would be discouraged is too vague to merit denial of petitioner's request in this proceeding. If this broad and non-specific reason were enough, then it would bar FOIL requests in every police investigation involving witnesses because respondent could always contend that witnesses would be hesitant to cooperate if their statements were subject to disclosure. This is not the purpose of FOIL and this Court will not contravene FOIL's clear legislative purpose.").

Nor can the life-and-safety exemption under POL § 87(2)(f) shield the audio of the complainant's and her child's interaction with the NYPD officers from disclosure. That exemption allows an agency to withhold materials that "if disclosed could endanger the life or safety of any person." An agency citing this exemption need only demonstrate "a possibility of endangerment." *Bellamy v. N.Y.C. Police Dep't*, 87 A.D.3d 874, 875 (1st Dep't 2011) (internal quotation marks and citation omitted).

Redactions under the life-and-safety exemption have been upheld in cases where the requesting party was the defendant in a criminal case or was convicted of the crime that was reported. *See, e.g., id.* at 875; *Johnson v. N.Y.C. Police Dep't*, 257 A.D.2d 343, 349 (1st Dep't 1999). Conversely, where the requester was a third party, *see Spectrum News NY1*, Index No. 150305/2016, NYSCEF Doc. 114, or where the crime was removed in time, *see Collins*, 55 Misc. 3d 1214(A), the exemption has been found to be inapplicable. As the Court previously observed in the Interim Order, this case sits somewhere in between. Here, it is undisputed that Petitioner was the accused in a report of criminal conduct made by the complainant. Unlike in *Johnson* or *Bellamy*, however,

---

[1] The Court did not identify any point in the audio in which the complainant did so, but out of an abundance of caution, Respondents should review the audio to ensure that the complainant or her child never stated their names or addresses.

the Queens District Attorney's Office dismissed the charge against Petitioner prior to arraignment.

The Court has reviewed the audio of the complainant's interaction with the NYPD officers and determines that its disclosure does not pose a threat to the complainant's personal safety to a degree outweighing the public's interest in the audio. The complainant does not state anything to the responding NYPD officers of which Petitioner did not already have knowledge or of which Petitioner was not informed by the NYPD officers at the scene. At the same time, the complainant's statements to the NYPD officers form the basis for Petitioner's arrest and are thus necessary context to the NYPD officers' actions. The arrest also occurred almost three years ago, and the charge was dismissed against Petitioner before he was even arraigned. Given this mix of factors, the Court concludes that the audio of the complainant's interactions with the NYPD officers did not qualify for redaction pursuant to POL § 87(2)(f).

Moreover, the complainant's child does not state anything in the audio that could conceivably endanger her life or safety. Indeed, the child barely speaks in a comprehensible manner at all. There is no justification, therefore, to redact the audio of the child's speech under POL § 87(2)(f).

## B. Redactions of NYPD Officers' Conversations

According to the submitted *Vaughn* index, three of the redactions applied across the six video files constitute removal of the audio of two NYPD officers' conversations. (*See* Vaughn Index at pp. 4, 10) Two of these redactions are applied to video file 1, and one is applied to video file 2. (*Id.*) Respondents base all three redactions on the exemption under POL § 87(2)(g) for intra- and inter-agency communications. (*Id.*)

POL § 87(2)(g) exempts "inter-agency or intra-agency materials which are not: (i) statistical or factual tabulations or data; (ii) instructions to staff that affect the public; (iii) final agency policy or determinations." This exemption permits employees of government agencies to exchange opinions "without the chilling prospect of public disclosure." *N.Y. Times Co. v. FDNY*, 4 N.Y.3d 477, 488 (2005), thus "ensuring that persons in an advisory role would be able to express their opinions freely to agency decision makers." *Xerox Corp. v. Town of Webster*, 65 N.Y.2d 131, 132 (1985) (internal quotation marks and citation omitted).

151851/2023 Frank Estevez v. New York City Police Department et al.
Page 6 of 11
Mot. Seq. Nos. 001

[* 6]
6 of 11

The same conversation between NYPD officers is captured in video file 1 at timestamp 08:17.467 – 09:38.967 and video file 2 at timestamp 08:16.900 – 09:38.100. Regardless of whether that conversation would qualify for exemption from disclosure under POL § 87(2)(g) on substantive grounds, the conversation clearly takes place within the hearing of the complainant and her child. As a result, the conversation is not an intra-agency communication exempt from disclosure under POL § 87(2)(g). *See Spectrum News NY1*, Index. No. 150305/2016, NYSCEF Doc. 114 at 26 ("[T]he court finds that, where the communication between police officers occurs within the earshot of members of the public, they can no longer be considered an intra-agency communication within the meaning of this exemption.").

The remaining redaction to video file 1, at timestamp 05:05.867 – 06:49.867, does, however, capture a telephone conversation between two NYPD officers that qualifies as an intra-agency communication subject to exemption under POL § 87(2)(g).

### C.      Redactions of Video of NYPD Officers' Cellphones

According to the submitted *Vaughn* index, 17 of the redactions applied across the six video files constitute blurring of footage of NYPD officers' cellphones. (*See* Vaughn Index at pp. 4, 14, 17-18, 20) Three of these redactions are applied to video file 1, one is applied to video file 3, 10 are applied to video file 4, and three are applied to video file 6. (*Id.*) As to the redactions to video file 1, Respondents base them on both the exemption under POL § 87(2)(b) for invasion of personal privacy and the exemption under POL § 87(2)(i) for security of electronic information technology assets. (*Id.* at p. 4) As to the redactions to video files 3 and 6, Respondents base them on the exemptions under POL § 87(2)(b) and (i) as well as the exemption under POL § 87(2)(g) for intra- and inter-agency communications. (*Id.* at pp. 14, 20) Finally, as to the redactions to video file 4, Respondents base them only on the exemption under POL § 87(2)(b). (*Id.* at pp. 17-18)

Under POL § 87(2)(i), an agency may withhold disclosure of material that, "if disclosed, would jeopardize the capacity of an agency or an entity that has shared information with an agency to guarantee the security of its information technology assets, such assets encompassing both electronic information systems and infrastructures." In the unredacted footage in video file 1, the officer's cellphone appears only very briefly, for no more than five seconds total, and its screen is barely visible. During those few seconds, the officer does not appear to be utilizing any specialized NYPD electronic information system, such as the Mobile Data Terminal ("MDT")

151851/2023 Frank Estevez v. New York City Police Department et al.                    Page 7 of 11
Mot. Seq. Nos. 001

system, but instead appears only to be making an ordinary phone call to another NYPD officer or NYPD personnel. The three redactions applied to video file 1 are, therefore, not proper under the POL § 87(2)(i) exemption.

These redactions, however, are proper under POL § 87(2)(b). Although the cellphone's screen is visible only for a brief time, the officer does appear to scroll through either her contacts or her prior incoming and outgoing calls, which may allow members of the public to discern names and phone numbers for individuals not even part of the arrest. Because of that potential, and because disclosure of the specific material carries very little public value, the balance weighs in favor of upholding the three redactions to video file 1 under POL § 87(2)(b).

The same is true for the redactions to video file 4. As to these redactions, Respondents claim only the exemption under POL § 87(2)(b) for personal privacy. Upon review of the unredacted footage, the officer in question can be seen entering his personal code to unlock his cellphone, scroll through his contacts, and engage in what appears to be a personal text-message conversation. There does not appear to be any real public interest in disclosure of this material, given its nature as unrelated to the subject arrest. Weighed against the material's potential to reveal the officer's code to unlock his cellphone and the names and phone numbers of other individuals if disclosed, the balance favors upholding the 10 redactions to video file 4 under POL § 87(2)(b).

The unredacted footage in video files 3 and 6 shows the officers using what appears to be the MDT system. Therefore, the one redaction to video file 3 and the three redactions to video file 6 are proper under POL § 87(2)(g) and (i).

### D.    Redactions of Video of CCTV Cameras

According to the submitted *Vaughn* index, 19 of the redactions applied across the six video files constitute blurring of closed-circuit television ("CCTV") monitors. (*See* Vaughn Index at pp. 14-15, 18) Thirteen of these redactions are applied to video file 3, and six are applied to video file 4. (*Id.*) With regard to all 19 redactions, Respondents base them on the exemption under POL § 87(2)(b) for invasion of personal privacy and the exemption under POL § 87(2)(i) for security of electronic information technology assets. (*Id.*)

151851/2023 Frank Estevez v. New York City Police Department et al.          Page 8 of 11
Mot. Seq. Nos. 001

[* 8]                                    8 of 11

In the unredacted footage in video files 3 and 4, the officers' BWCs capture a TV monitor in the background at the police station displaying feeds from several CCTV cameras. Those CCTV cameras appear to capture footage from various places outside and within the police station. In both video files, the TV monitor is at such a distance that discerning any details of what the CCTV cameras are capturing is difficult—but not impossible.

Respondents do not present any argument in their papers as to why the exemption under POL § 87(2)(i) for security of electronic information technology assets should apply to the footage of the TV monitor displaying the CCTV footage. These CCTV cameras, however, are "information technology assets" within the meaning of POL § 87(2)(i). And to the extent that disclosure of the CCTV footage could potentially allow the public to understand where each camera is located outside or inside the police station, members of the public could conceivably use the footage to tamper with or defeat one or more of these cameras. This outcome is arguably one that POL § 87(2)(i) seeks to guard against. Therefore, Respondents' redaction of the CCTV footage in video files 3 and 4 is proper under POL § 87(2)(i).

### E. Nonresponsive Material

In video files 1, 2, 5, and 6, portions of the footage have been redacted on grounds that it is nonresponsive to Petitioner's FOIL request. Neither party appears to argue that the material designated nonresponsive was improperly designated as such. The Court has, however, reviewed the footage and sees no reason to disturb that designation. The large portions of video files 1 and 2 that were marked nonresponsive simply capture NYPD officers filling out paperwork while in complainant's apartment, after Petitioner had been arrest and removed from the premises. The few minutes of footage redacted from video files 5 and 6 merely shows officers leaving the premises after Petitioner's removal.

### F. Conclusion

Based on the Court's *in camera* review of the unredacted BWC footage, the Court concludes that all redactions were properly applied *except for*: (1) the redactions applied to the audio of the complainant and her child in video files 1, 2, 3, and 4; and (2) the redactions applied to the audio of the NYPD officers' conversation in video file 1 at timestamp 08:17.467 – 09:38.967 and video file 2 at timestamp 08:16.900 – 09:38.100. These materials must be produced to Petitioner unredacted, with the caveat that the NYPD should re-review the audio of the complainant and

her child to ensure that the name, address, or other *specific* identifying information of either is not mentioned by the complainant or her child. If it is, that material may be redacted.

## II.   ATTORNEY'S FEES

Under POL § 89(4)(c)(ii), a court

> shall assess, against such agency involved, reasonable attorney's fees and other litigation costs reasonably incurred by such person in any case under the provisions of this section in which such person has substantially prevailed and the court finds that the agency had no reasonable basis for denying access.

Here, the Court finds that Petitioner has not "substantially prevailed." The NYPD produced the BWC footage to Petitioner prior to the commencement of this proceeding, and, as determined herein, the majority of the redactions that the NYPD applied to the produced footage were proper. Therefore, because the statutory requirements are not met, the Court exercises its discretion and declines to award attorney's fees.

The Court has considered the additional contentions of the parties not specifically addressed herein. To the extent that any relief requested by the parties was not addressed by the Court, it is hereby denied.

Accordingly, it is hereby

**ORDERED and ADJUDGED** that the Verified Petition and Notice of Petition (Seq. No. 1) are **GRANTED IN PART** to the extent set forth herein and otherwise **DENIED IN PART**; and it is further

**ORDERED** that, **within 30 days** of entry of this Decision and Order, Respondents shall produce to Petitioner the six video files corresponding to Petitioner's arrest, Arrest ID Q2206422-L, with only those redactions found to be proper herein; and it is further

**ORDERED** that the Respondents shall serve a copy of this Decision and Order upon Petitioner and the Clerk of the General Clerk's Office, with notice of entry within twenty (20) days thereof; and it is further

ORDERED that service upon the Clerk shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (Revised August 15, 2019);[2] and it is further

ORDERED that the Clerk shall mark Motion Sequence No. 1 decided in all court records; and it is further

ORDERED that the Clerk shall mark this proceeding disposed in all court records.

This constitutes the decision and order of the Court.

| January 30, 2025 | | SHAHABUDDEEN A. ALLY, A.J.S.C. |
|---|---|---|
| DATE | | |

| CHECK ONE: | [X] CASE DISPOSED | [ ] NON-FINAL DISPOSITION | |
|---|---|---|---|
| APPLICATION: | [ ] GRANTED   [ ] DENIED | [X] GRANTED IN PART | [ ] OTHER |
| CHECK IF APPROPRIATE: | [ ] SETTLE ORDER | [ ] SUBMIT ORDER | [ ] STAY CASE |
| | [ ] INCLUDES TRANSFER/REASSIGN | [ ] FIDUCIARY APPOINTMENT | [X] REASSIGN |

---

[2] The protocols are available at https://www.nycourts.gov/LegacyPDFS/courts/1jd/supctmanh/Efil-protocol.pdf.

**151851/2023 Frank Estevez v. New York City Police Department et al.**
**Mot. Seq. Nos. 001**

Page 11 of 11

[* 11]